FILED

2024 Mar-19  PM 04:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| TONY HOLCOMB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.: 7:22-cv-01619-JHE |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION[1]

Plaintiff Tony Holcomb ("Holcomb") seeks review, pursuant to 42 U.S.C. § 405(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability and disability insurance benefits ("DIB").  (Doc. 1).  Holcomb timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

On February 12, 2019, Holcomb filed an application for a period of disability and DIB. (Tr. 16).  Holcomb originally alleged disability beginning February 4, 2016.  (Tr. 16).  The Commissioner denied Holcomb's claims on November 4, 2019, and denied them again upon reconsideration on May 15, 2020.  (Tr. 16).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 10).

Holcomb timely requested a hearing before an Administrative Law Judge ("ALJ").  On July 29, 2021, prior to the originally scheduled hearing, Holcomb submitted a request for subpoenas to compel the attendance at the hearing of consultative examiner Dr. Scott Thomas and reviewing physicians Drs. Krishna Reddy and Gloria L. Sellman.  (Tr. 456–57).  The ALJ held a telephonic hearing with none of those physicians present on August 12, 2021, but ultimately postponed the hearing so that Holcomb could obtain additional evidence unrelated to the absent physicians.  (Tr. 73–79).  The ALJ held a second telephonic hearing on December 2, 2021, but continued the hearing again due to discrepancies with exhibit numbers.  (Tr. 64–72).  The ALJ held a third telephonic hearing on April 13, 2022, at which Holcomb amended his onset date to October 1, 2018.  (Tr. 16, 36–63).  At the hearing (which, again, none of the physicians attended), the ALJ orally denied Holcomb's request for subpoenas.  (Tr. 39–43).  The ALJ subsequently entered an unfavorable decision denying Holcomb's application for benefits in a decision dated May 20, 2022. (Tr. 16–28).  The ALJ memorialized her denial of Holcomb's subpoena request in this decision.[2]  (Tr. 16)

Holcomb sought review by the Appeals Council, but it denied his request for review on October 25, 2022.  (Tr. 1). On that date, the ALJ's decision became the final decision of the Commissioner.  On December 29, 2022, Holcomb initiated this action.  (Doc. 1).

Holcomb was fifty-eight years old on December 31, 2019, his date last insured ("DLI"). (Tr. 27).  Holcomb has past relevant work as a tire repairman.  (Tr. 26).

---

[2] Following the hearing, Holcomb also requested subpoenas for two other physicians, Drs. Robert Estock and Samuel D. Williams.  (Tr. 470–71).  The ALJ also denied this request.  (Tr. 16). Holcomb does not raise any issues related to subpoenas for these physicians on appeal.

## II. Standard of Review[3]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations

---

[3] In general, the legal standards applied are the same whether a claimant seeks Supplemental Security Income ("SSI") or DIB. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

promulgated thereunder.[4]  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505 (a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520 (a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is engaged in substantial gainful activity

(2) whether the claimant has a severe impairment;

(3)  whether the claimant's impairment meets or equals an impairment listed by the SSA;

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1312 (11th Cir. 2021). If a claimant satisfies Steps One and Two, he or she is automatically found disabled if he or she suffers from a listed impairment.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  "Once a claimant proves that she can no longer perform her past relevant work, the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform."  *Id.* (cleaned up).

_____

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the five-step evaluation process, the ALJ made the following findings:

At Step One, the ALJ found that Holcomb had not engaged in substantial gainful activity from his amended alleged onset date to his DLI.  (Tr. 18–19).  At Step Two, the ALJ found that Holcomb has the following severe impairments through his DLI: obesity, coronary artery disease, and hypertension.  (Tr. 19).  At Step Three, the ALJ found that Holcomb does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 21–22).

Before proceeding to Step Four, the ALJ determined Holcomb's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments.  *See* 20 C.F.R. § 404.1545(a)(1).  The ALJ determined Holcomb has the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) except frequent climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; no balancing as defined by DOT; frequent stooping, kneeling, crouching, and crawling; no unprotected heights or hazardous machinery; no excessive vibration; avoid concentrated exposure to extreme temperatures, wetness, and humidity; and should avoid concentrated exposure to pulmonary irritants (i.e., dust, fumes, odors, gasses, and poorly ventilated areas).

(Tr. 22).

At Step Four, the ALJ found, relying in part on hearing testimony from a vocational expert, that Holcomb is unable to perform his past relevant work.  (Tr. 26).  At Step Five, the ALJ found that, considering Holcomb's age, education, work experience, and RFC, Holcomb is able to perform jobs that exist in significant numbers in the national economy.  (Tr. 27).  Therefore, the ALJ determined Holcomb had not been under a disability from October 1, 2018 (the amended onset date) through December 31, 2019 (the DLI) and denied his claim.  (Tr. 28).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Williams*, 615 F.2d 1103, 1106 (5th Cir. 1980)).  The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Holcomb argues for reversal and remand on three grounds: (1) that the ALJ deprived him of due process when she foreclosed his ability to cross-examine adverse witnesses (doc. 11 at 4–7); (2) that the ALJ erred by rejecting the opinions of Drs. George P. Hemstreet and Debra Davis (*id.* at 7–11); and (3) that the ALJ improperly rejected his testimony (*id.* at 12–13).  None of these issues requires remand.

### A. The ALJ's Decision to Reject Holcomb's Subpoenas Did Not Deprive Holcomb of Due Process

Due process requires the "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) (cleaned up).  In the context of a Social Security proceeding, due process requires "a full and fair hearing."  *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985).

"When it is reasonably necessary for the full presentation of a case, an [ALJ] . . . may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses . . . ."  20 C.F.R. § 404.950(d)(1).  The regulations require a party seeking a subpoena to file a written request that must "give the names of the witnesses or documents to be produced; describe the address or location of the witnesses or documents with sufficient detail to

find them; state the important facts that the witness or document is expected to prove; and indicate

why these facts could not be proven without issuing a subpoena." 20 C.F.R. § 404.950(d)(2).

Consistent with this permissive language, the Eleventh Circuit has assumed (but not squarely held)

that an ALJ has discretion not to allow cross-examination and reviews such a decision under an

abuse of discretion standard. *Demenech v. Sec'y of the Dep't of Health & Hum. Servs.*, 913 F.2d

882, 884 (11th Cir. 1990).

In advance of the August 12, 2021 hearing, Holcomb's attorney requested the ALJ

subpoena three physicians: Dr. Scott Thomas, who performed a March 28, 2020 consultative

examination docketed as Exhibit C11F (tr. 776–82); Dr. Krishna Reddy, who reviewed Holcomb's

records on behalf of the state agency and issued an opinion on October 29, 2019 docketed as

Exhibit C5A (tr. 124–37); and Dr. Gloria L. Sellman, who also reviewed Holcomb's medical

records on behalf of the state agency and whose May 5, 2020 opinion appears in the record as

Exhibit C7A (tr. 139–54).[5]  (Tr. 456–57).  To support this request, Holcomb's attorney stated:

> A complete list of all the important facts that the witnesses are expected to prove
> would be impossible to anticipate, as the nature of cross-examination tends to reveal
> additional needed facts than were known to exist in advance.  However, as of now,
> the facts that are expected to be explored are the bases for the witnesses' opinions
> given in their reports, along with any factors that would mitigate the weight
> properly to be given those opinions.

(Tr. 456).  Holcomb's attorney indicated he intended to object to the reports at the hearing if the

physicians were not made available for cross-examination.  (Tr. 456).  True to this statement, he

---

[5] The letter referred to Dr. Reddy's opinion and Dr. Sellman's opinion as, respectively,
Exhibit 4A and Exhibit 6A.  (Tr. 456).  At the April 13, 2022 hearing (presumably after resolving
the exhibit number discrepancies identified at the December 2, 2021 hearing), Holcomb's attorney
identified the exhibits as they currently appear in the record.  (*See* tr. 39–40).

objected to all three reports at the August 12, 2021 hearing and again at the April 13, 2022 hearing.[6]
(Tr. 41–43, 77).  The ALJ orally denied Holcomb's request on the basis that Holcomb's objection
went to the weight of the evidence and not its admissibility.  (Tr. 41–42).  She also stated: "I'm
not quite sure -- I don't believe there is a specific reason of exactly what the stated facts -- why the
stated facts cannot be proven without a subpoena or the important facts expected to be proven
without issuing the subpoena have been met."  (Tr. 42).    In response, Holcomb's attorney
reiterated his position that he had "a due process right to cross-examine those witnesses that have
given adverse testimony," but proceeded with the hearing with that objection preserved for
appellate review.  (Tr. 42–43).

  The ALJ memorialized this ruling in her decision.  (Tr. 16).  The ALJ determined that
Holcomb had not met the requirements of § 404.950(d)(2) because his request was "vague at best"
as to both the facts Holcomb intended to prove through the physicians' testimony and why those
facts could not be proven without issuing a subpoena.  (Tr. 16).  The ALJ ultimately found the
opinions of Drs. Reddy and Sellman to be persuasive and Dr. Thomas's opinion partially
persuasive.  (Tr. 25).

  True to the ALJ's characterization, Holcomb's subpoena request indicates that he could
not anticipate what facts would be learned beyond exploring the bases for the physicians' opinions.
(Tr. 456).  It also provides no explanation for why a subpoena would be necessary to prove any
facts he intended to discover.  (*See* tr. 456–67).  Given Holcomb's failure to satisfy the regulatory

---

[6] Holcomb's attorney also objected to the admission of two other exhibits on the same
rationale.  (Tr. 40).  The ALJ denied Holcomb's request to subpoena the authors of these exhibits,
which were reports from examinations in July 2014 and March 2016, on the basis that the exhibits
were not relevant in light of Holcomb's amended onset date.  (Tr. 41).  Holcomb does not raise
any issues involving these exhibits on appeal.  (*See generally* doc. 11).

criteria to show that a subpoena was "reasonably necessary for the full presentation of [his] case," 20 C.F.R. § 404.950(d)(1), the undersigned cannot say the ALJ abused her discretion by declining to issue subpoenas.

Holcomb contends the ALJ's basis for denying the subpoena request was "tantamount to the rationale given in *Demenech* . . . ." (doc. 11 at 6), in which the Eleventh Circuit found a lack of opportunity for cross-examination was a due process violation requiring remand.  He quotes a portion of *Demenech* indicating that "[c]ross-examination of Dr. Goldberg could reveal the sensitivity and credibility of the tests he employed to arrive at his conclusions; it could expose the evidence he considered or failed to consider, and it could establish the certainty with which he holds his opinion that Demenech is no longer disabled."  (*Id.*) (quoting *Demenech*, 913 F.2d at 885).  The procedural posture of the request for cross-examination in *Demenech* was unlike this case, so the cited portion is not entirely apt.  The referenced Dr. Goldberg was a Social Security Administration consultative physician who (along with another consultative physician) examined the plaintiff after the ALJ held a hearing.  *Demenech*, 913 F.2d at 883.  The plaintiff's lawyer requested an opportunity to depose Dr. Goldberg and respond to his report, but the ALJ denied the request.  *Id*.  The ALJ subsequently relied on Dr. Goldberg's "very favorable report of [the plaintiff's] condition" to conclude the plaintiff was not under a disability.  *Id*.  The Eleventh Circuit reaffirmed its prior precedents indicating "that it violates a claimant's right to procedural due process for the Secretary to deny a claimant Social Security benefits *based upon post-hearing medical reports* without giving the claimant an opportunity to subpoena and cross-examine the authors of such reports."  *Id.* at 884 (emphasis added) (citing *Hudson v. Heckler,* 755 F.2d 781, 784 (11th Cir. 1985); *Cowart v. Schweiker,* 662 F.2d 731, 737 (11th Cir. 1981)).  In  context, the section of *Demenech* Holcomb quotes reinforces that the "extraordinary utility" of cross-

examination is tied to the fact that the "ALJ substantially relie[d] on a post-hearing medical report that directly contradict[ed] the medical evidence that supports the claimant's contention . . . ."[7] *Id.* at 885. *Demenech* does not provide an unqualified due process right to cross-examine medical opinion sources, particularly the authors of *pre-hearing* medical reports like the ones in this case. *See Martz v. Comm'r, Soc. Sec. Admin.*, 649 F. App'x 948, 964 (11th Cir. 2016) (noting, in an unpublished decision, that "nothing in *Demenech* suggests that its holding applies with equal force to medical reports submitted prior to the administrative hearing . . . .").

Furthermore, to the extent Holcomb was deprived of due process when the ALJ denied him the opportunity for cross-examination, he is also required to demonstrate that he was prejudiced by that deprivation. *See George v. Astrue*, 338 F. App'x 803, 805 (11th Cir. 2009) ("there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record") (quoting *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995)); *Kelley*, 761 F.2d at 1540. The court must review the administrative record to determine whether it is inadequate, incomplete, or "show[s] the kind of gaps in the evidence necessary to demonstrate prejudice.*" Id.* (quoting *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997)). For substantially the same reasons that the ALJ denied Holcomb's subpoena request, Holcomb cannot show that he was prejudiced by the lack of an opportunity to cross-examine the physicians. Holcomb's subpoena request does not provide any indication of what would be learned from the physicians beyond

---

[7] Holcomb's other source of authority for the utility of cross-examination in the abstract, *Wallace v. Bowen*, 869 F.2d 187 (3rd Cir. 1988) (doc. 11 at 6), arose in the same posture as *Domenech* and mirrors its holding. *See Wallace*, 869 F.2d at 191–92 ("We believe . . . that it is unmistakable under the statute that the Secretary may not rely on post-hearing reports without giving the claimant an opportunity to cross-examine the authors of such reports, when such cross-examination may be required for a full and true disclosure of the facts.").

"explor[ing]" the contours of their opinions.  (Tr. 456).  Similarly, Holcomb's brief does not indicate what evidentiary gap would have been filled through cross-examination.[8]  These assertions are too speculative to support that there was any prejudice to Holcomb due to his inability to cross-examine Drs. Thomas, Reddy, and Sellman.  Accordingly, remand is unwarranted on this ground.

### B. The ALJ Did Not Err in Evaluating Opinion Evidence

For claims filed on or after March 27, 2017, such as this case, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ is required to "articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions," 20 C.F.R. § 404.1520c(b), taking into account five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including, but not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c). In articulating an opinion's persuasiveness, the ALJ must explain how he

---

[8] Holcomb indicates that other opinions in the record contradicted the opinions of Drs. Thomas, Reddy, and Sellman (doc. 11 at 7), but he knew about these contradictions well before the hearing and had an opportunity to rebut them.  *Cf. Cowart*, 662 F.2d at 737 (claimant's due process violated when claimant "was not given an opportunity to examine or challenge" post-hearing reports or cross-examine their authors).  In other words, unlike the plaintiff in *Demenech*, Holcomb was not surprised by an adverse opinion with no opportunity to counter it.

or she considered the factors of supportability and consistency—the most important factors—and may (but is not required to) explain how he or she considered the other remaining factors. 20 C.F.R. § 404.1520c(b)(2).

### 1. Dr. Hemstreet

Dr. Hemstreet provided a medical source statement dated May 11, 2016. (Tr. 1025–29). In that statement, he listed various physical and mental restrictions dating back to May 4, 2016. (*Id.*). The ALJ quickly dismissed Dr. Hemstreet's opinion. (Tr. 25–26). The ALJ did not review Dr. Hemstreet's opinion for consistency or supportability, instead stating: "Recency of an evaluation is relevant in determining whether the evaluation is sufficiently current and the regulations only require that we review evidence twelve months prior to the filing of the application (20 CFR 404.1512(b)). Given the lapse in time, Dr. Hemstreet's opinion is not persuasive." (Tr. 25–26).

Holcomb contends the ALJ's reliance on 20 C.F.R. 404.1512(b) was misplaced. (Doc. 11 at 7–8). The regulation sets out the Commissioner's responsibility to develop the record for "at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application." 20 C.F.R. 404.1512(b)(1). Holcomb correctly notes that the regulation governing an ALJ's *consideration* of the evidence is contained in 20 C.F.R. § 404.1520c(b), as set out above. (Doc. 11 at 8). The ALJ's statement that she was only obligated to review evidence from the twelve months preceding the application date was erroneous.

That said, the ALJ's error was harmless because citing the appropriate regulation would not have changed the outcome of the ALJ's consideration of Dr. Hemstreet's opinion. *See Diorio*

12

*v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding error harmless when it would not change the outcome). Although Holcomb argues that "recency" is not a factor set out in 20 C.F.R. § 1520c (doc. 11 at 8), the regulations explicitly permit an ALJ to consider "other factors" beyond those enumerated. 20 C.F.R. § 1520c(c)(5). The age of Dr. Hemstreet's opinion is relevant here, particularly because the opinion predated Holcomb's amended onset date by almost a year and a half. Evidence from before a claimant's onset date can be relevant when it is probative of the plaintiff's limitations during the relevant time period, *see Douglas v. Comm'r of Soc. Sec.*, 486 F. App'x 72, 75 (11th Cir. 2012), but there is no indication here (and Holcomb does not argue) that Dr. Hemstreet's opinion fits that standard. The ALJ appropriately considered the lapse in time relevant to the persuasiveness of Dr. Hemstreet's opinion given that the opinion predated the onset date.[9] And any error the ALJ committed in failing to address the opinion's supportability and consistency is harmless because of the opinion's limited relevance in evaluating Holcomb's limitations as of the relevant time period. *See, e.g., Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 856 (11th Cir. 2018) (stating that medical opinions were of limited relevance because they predated claimant's alleged disability date); *Naberhaus v. Kijakazi*, No. 8:20-CV-2190-SPF, 2022 WL 897540, at *11 (M.D. Fla. Mar. 28, 2022) (holding ALJ did not err by failing to specifically assign persuasiveness to opinion that predated claimant's onset date).

---

[9] Holcomb is correct that "[w]hen an ALJ fails to provide an adequate articulation of the reasons for rejecting a medical opinion, 'it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" (Doc. 11 at 8) (quoting *Winschel v. Commissioner of Social Sec.*, 631 F. 3d 1176, 1179 (11th Cir. 2011). However, the ALJ's statement that she rejected Dr. Hemstreet's opinion because of the lapse in time provides ample evidence for the court's review. *See Santos* 731 F. App'x at 856 (finding ALJ complied with *Winschel* when she stated she was rejecting opinions because they predated claimant's onset date).

**2. Dr. Davis**

Dr. Davis provided a handwritten opinion on November 16, 2021, containing her assessment of Holcomb's limitations. (Tr. 1034–35). Dr. Davis prefaced her opinion by noting that she had seen and examined Holcomb the previous day (November 15, 2021) and that Holcomb "has been a patient of mine since 2005." (Tr. 1034). Dr. Davis indicated that Holcomb's health had declined "due to HX of CABG[10] 11 yrs ago" resulting in "myocardial thickening, chronic HTN, varicose vein issues in both legs." (Tr. 1034). Dr. Davis also stated that Holcomb sleeps poorly and had worsening carpal tunnel syndrome in both hands. (Tr. 1034). She opined that Holcomb had great difficulty with grasping, fine motor skills, and ability to grip, and could not bend more than 45 degrees with his back. (Tr. 1034). Dr. Davis observed that Holcomb had been diagnosed with a fatty enlarged liver "[s]ince his last disability hearing." (Tr. 1035). Dr. Davis concluded that she did "not believe [Holcomb] could sit for longer than 1 hr, stand longer than 30 minutes, walk more than 1 block before needing to rest" and that Holcomb "cannot manipulate fine hand movements due to extensive changes in hands + wrists."[11] (Tr. 1035).

The ALJ found Dr. Davis's opinion not persuasive. (Tr. 26). Specifically, the ALJ stated that Dr. Davis "does not delineate when these limitations began or occurred with the claimant and they appear to be largely from her examination of the claimant the day prior." (Tr. 26). The ALJ found that the "objective records showed only mild degenerative findings in the claimant's back in October 2018, with no evidence of instability, pars defect, or significant abnormal motion of the

---

[10] "CABG" refers to coronary artery bypass grafting—another name for heart bypass surgery. NIH National Heart, Lung, and Blood Institute, "What Is Coronary Artery Bypass Grafting?", https://www.nhlbi.nih.gov/health/coronary-artery-bypass-grafting (last visited March 5, 2024). (*See, e.g.,* tr. 860) (noting Holcomb underwent "urgent CABG" in December 2010).

[11] Dr. Davis also offered opinions concerning Holcomb's mental limitations (tr. 1035), but Holcomb does not challenge anything related to those. (*See* doc. 11 at 8–11).

flexion extensor views." (Tr. 26) (citing Exhibit C4F). The ALJ noted that visits in October 2019 and March 2020 showed "no clubbing, no cyanosis, no evidence of scoliosis, intact functional cognition, normal range of motion in [Holcomb's] extremities, normal strength, no tenderness, no swelling, no deformity, no spasm of the paraspinous muscles, 4/5 grip strength bilaterally, and normal fine and gross manipulative skills." (Tr. 26) (citing Exhibits C9F and C11F).

Holcomb takes issue with the ALJ's conclusion that Dr. Davis's opinion does not specify when the limitations she found began and that they appeared to rely on the previous day's examination. (Doc. 11 at 8–9). Holcomb points out that Dr. Davis's letter recounts her treatment history with Holcomb and that Dr. Davis references Holcomb's decline since his bypass surgery and his condition since his last disability hearing.[12] (*Id.* at 9). Acknowledging that the opinion is unclear, Holcomb insists the ALJ should have recontacted Dr. Davis rather than rejecting her opinion. (*Id.* at 9–11). Finally, Holcomb argues the ALJ failed to evaluate Dr. Davis's opinions for supportability and consistency, as required by the regulations. (*Id.* at 11).

Taking the last of these first, Holcomb is correct that the ALJ did not use the words "supportability" or "consistency" when discussing Dr. Davis's opinion. But that does not meant that it is impossible—or even difficult—for a reviewing court to discern how the ALJ applied those factors. The ALJ's obligation is to provide enough detail that the court may understand the ALJ's analysis. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (noting that an ALJ must "state with at least some measure of clarity the grounds for [her] decision"). Although it is not especially helpful for an ALJ to avoid the regulatory language in analyzing opinion evidence, it does not preclude review so long as the court can discern what the ALJ meant.

---

[12] Holcomb states that this hearing occurred on March 7, 2018. (Doc. 11 at 9).

The bulk of Holcomb's complaints fall under the supportability factor, which considers the objective medical evidence and supporting explanations presented by a medical source to support his medical opinion. *See* 20 C.F.R. § 404.1520c(c)(1). The ALJ found Dr. Davis's opinion was predominately supported by her November 15, 2021 examination. To make this determination, the ALJ noted that Holcomb's limitations were not reflected in Dr. Davis's notes of Holcomb's October 2019 visit, reflected in Exhibit C9F (tr. 769–73).[13] The ALJ's description of this exhibit is accurate: Dr. Davis did not record any abnormal musculoskeletal findings during her review of symptoms at this visit. (*See* tr. 772).[14]

The ALJ's decision also requires the court to read between the lines as to the consistency factor, which looks to how the medical source's opinion relates to "evidence from other medical sources and nonmedical sources in the claim." *See* 20 C.F.R. § 404.1520c(c)(2). But there is sufficient guidance in the decision to do so. Specifically, the ALJ pointed to Exhibit C4F, a January 2, 2019, office visit to Dr. Rick McKenzie with West Alabama Neurosurgery Spine, P.C.[15] (Tr. 657–61). Consistent with the ALJ's description, Dr. McKenzie found mild deformities in Holcomb's lumbar spine, but no evidence of pars defect and no significant abnormal motion of the

---

[13] Although the ALJ did not specifically cite it in the context of Dr. Davis's opinion, Dr. Davis's records from December 14, 2016 to February 13, 2019 are also in the record as Exhibit C5F. (Tr. 662–704). Like Exhibit C9F, those records do not contain the limitations Dr. Davis found in her November 2021 opinion. The ALJ noted these records in determining Holcomb's severe impairments (tr. 19), so it is reasonable to conclude that the ALJ considered them in determining that Dr. Davis's opinion was based primarily on her November 2021 examination.

[14] The undersigned notes that this visit was a follow-up at which Holcomb sought a prescription for Xanax. (Tr. 770). While the undersigned is generally skeptical of a review of symptoms at an unrelated visit is evidence that the claimant had "normal" findings as to a condition, the same cannot be said for whether a medical source's records support her opinion; the absence in a source's records of any indication of limitations from or treatment for a condition is probative of the foundation of the source's opinion.

[15] The ALJ misstated the date of this visit as October 2018, but that misstatement does not appear to have any effect on the ALJ's analysis.

flexion extension views.  (Tr. 661).  Dr. McKenzie found that Holcomb's pain "sounds more like musculoskeletal or arthritic-type back pain than degenerative disc back pain."  (Tr. 660).  The ALJ also cited Exhibit C11F, which is Dr. Thomas's consultative evaluation.  (Tr. 776–82).  As the ALJ discussed, Dr. Thomas found (among other things) 4/5 grip strength bilaterally and normal (10/10) fine and gross manipulative skills bilaterally.  This is in stark contrast to Dr. Davis's determination that Holcomb had great difficulty with grasping, fine motor skills, and ability to grip.[16]  The ALJ's conclusion that these findings are inconsistent with the disabling conditions Dr. Davis found is supported by substantial evidence.

The remainder of Holcomb's argument as to Dr. Davis is that the ALJ had an obligation to further develop the record to clear any ambiguities as to the time period to which her opinion related.  (Doc. 11 at 10–11).  As part of a claimant's right to due process, an ALJ "has a basic obligation to develop a full and fair record."  *Ellison v. Barnhart*, 355 F.3d 1271, 1276 (11th Cir. 2003); *Graham*, 129 F.3d at 1422.  However, as discussed above, a claimant must show prejudice to merit remand based on a due process violation.  "The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice."  *Graham*, 129 F.3d at 1423.  Here, the ALJ had no obligation to recontact Dr. Davis when the ALJ could have reasonably reached her conclusion based on the record before her: Holcomb's prior treatment history with Dr. Davis that contained no relevant discussion of the limitations she found in her opinion, plus an evaluation dated the day before the opinion that *did* discuss those limitations.

---

[16] Holcomb contends the ALJ has an obligation to show genuine inconsistency (doc. 11 at 11), but the inconsistency between Dr. Thomas's examination and findings and Dr. Davis's examination and findings is hardly a "trivial and indirect tension," *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1263 (11th Cir. 2019), between the two opinions.

Under the circumstances, there was no clear evidentiary gap the ALJ was required to fill by recontacting Dr. Davis.

### C. The ALJ Appropriately Considered Holcomb's Pain Testimony

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561–62. An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 F. App'x 287, 288 (11th Cir. 2009).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029 at *3–10. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. § 404.1529(c)(3)–(4); SSR 16-3p, 2016 WL 1119029 at *3–10. If

18

an ALJ discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002). "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy." *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

Holcomb's entire argument is that the evidence the ALJ cited to undermine his pain testimony is not contradictory, but rather is evidence that simply does not objectively prove his symptoms. (Doc. 11 at 12–13). Holcomb appears to be arguing that once he has satisfied the pain standard by showing a medically determinable impairment that could reasonably be expected to cause symptoms and functional limitations, the ALJ is bound to accept Holcomb's account. As set out above, that is not the law. The ALJ was entitled to contrast Holcomb's testimony with the objective evidence of record indicating that Holcomb was not as limited as his testimony indicated. SSR 16–3P, which guides an ALJ in evaluating the intensity and persistence of a claimant's symptoms, explicitly provides that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities for an adult . . . ." SSR 16–3P at *5.

Beyond arguing that the ALJ was not entitled to contrast his reported symptoms with the objective medical evidence, Holcomb does not contend the ALJ inappropriately evaluated the

record evidence.[17]  Since the ALJ was expressly permitted to consider objective medical evidence in applying the pain standard, her application of the pain standard was not erroneous.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Mitchell's claim for a period of disability and disability insurance benefits is **AFFIRMED**.  A separate order will be entered.

DONE this 19th day of March, 2024.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

---

[17] The only specific piece of evidence in the record that Holcomb points to is Dr. Davis's opinion, which he says is an example of medical evidence consistent with his testimony that he could not stand for prolonged periods of time.  (Doc. 11 at 13).  However, the ALJ was not required to defer to Dr. Davis's opinion.  20 C.F.R. § 404.1520c(a) (an administrative law judge must "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources.").  As discussed above, substantial evidence supports the ALJ's decision that Dr. Davis's opinion was not persuasive.